**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

CYNTHIA LEE,                                  )
                                              )
          Plaintiff,                          )
v.                                            )          Case No. 14-cv-1116 (AJT/TCB)
                                              )
FAIRFAX COUNTY SCHOOL BOARD, et al.,          )
                                              )
          Defendants.                         )

**DEFENDANTS' MEMORANDUM AND MATERIAL STATEMENT OF
FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants, the Fairfax County School Board ("the School Board"), Dr. Jack Dale, Dr. Phyllis Pajardo and Jamey Chianetta, by counsel, submit this Memorandum of Law and Material Statement of Facts in Support of Defendants' Motion for Summary Judgment with supporting Affidavits and Exhibits, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**Summary of Argument**

At Counts I and II of the Complaint, Lee seeks to avoid her release of all claims arising out of her employment with the School Board by asking the Court to void the 2012 Settlement Agreement attached to the Complaint as Exhibit RR ("the Agreement"), based upon conclusory allegations of economic duress and unconscionability.  Under applicable law, as supported by the School Board's Statement of Material Facts Not In Dispute and related affidavits and exhibits, both counts fail and the waiver/release provision of the Agreement operates to bar all remaining claims asserted in the Complaint.

**Procedural Background**

Plaintiff Cynthia Lee ("Lee"), a former special education teacher with the Fairfax County Public Schools ("FCPS"), has filed a ten-count Complaint against the School Board, former

Division Superintendent Jack Dale, Assistant Superintendent for Human Resources, Phyllis

Pajardo, and Jamey Chianetta, Principal of Halley Elementary School ("Halley").  The

Complaint asserts racial discrimination and retaliation claims under 42 U.S.C. §§ 1981 and 1983

(Counts VI through X), a Fourteenth Amendment procedural due process claim (Count III), and

state law claims of defamation and wrongful termination (Counts IV and V).  At Counts I

("economic duress") and II ("unconscionability"), Lee asks the Court to declare void a settlement

agreement ("the Agreement"), which she entered into with the School Board in 2012.

Complaint, pp. 33-47; Lee Exh. RR.

Lee alleges, *inter alia,* that she was discriminated against based on her race and endured a

hostile work environment at Halley during the 2010-11 and 2011-12 school years, when she

received negative performance evaluations, was placed on an Intervention Work Plan and was

required to use a specific model for the development of lessons plans.  Compl., ¶¶ 54-73.  Lee

further alleges that despite a heavy work load she was not provided with an instructional

assistant ("IA"), had disagreements with her teaching team, was subjected to multiple

observations and scolded by the assistant principal, and was advised during her mid-year

evaluation in January of 2012 that the principal ("Chianetta") would not be recommending her

reappointment.  *Id.* ¶¶ 74-116.

On February 10, 2012, Lee filed an internal grievance alleging racial discrimination,

which was investigated by the FCPS Office of Equity and Compliance ("OEC").  *Id.* ¶¶ 124-128.

On May 14, 2012, Lee received her final evaluation for the 2011-12 school year, and Chianetta

recommended that Lee be terminated for performance issues.  *Id.* ¶¶ 159-166; Lee Exh. JJ.

On May 30, 2012, Dr. Dale provided Lee with notice that he intended to recommend her

dismissal to the School Board and that she had a right to grieve his recommendation under the

State Grievance Procedure for teachers.  Lee Exh. MM.  Lee alleges that she was denied certain steps of the grievance procedure and, due to the cost and expense of a fact-finding panel, was precluded from grieving her dismissal.  *Id.* ¶¶ 169-175.  Thereafter, Lee asked OEC to incorporate the dismissal recommendation into her pending discrimination claim.  *Id.* ¶ 167.  On June 21, 2012, OEC advised Lee that its investigation indicated her claim of discrimination was unfounded.  *Id.* ¶ 168.

In August of 2012, Lee entered into the Agreement with the School Board, in which, *inter alia*, the Superintendent withdrew the dismissal recommendation and Lee accepted a voluntary demotion to an IA position with a decrease in salary, which position she held from August of 2012 through April of 2014, when she resigned due to "the humiliation and emotional distress" associated with her demotion.  *Id.* ¶¶ 180-188.  In the Agreement, Lee waived her grievance and all claims against the School Board and its employees arising out of her employment, including but not limited to, all federal and state law claims and all claims based on race or any other form of employment discrimination.  *Id.* ¶ 183; Lee Exh. RR – ¶ 5.  Lee has referenced and attached to her Complaint numerous documents relating to her allegations, including the Agreement (Lee Exh. RR).  *See* Compl., seriatim, Lee Exhs. A-SS.

**Statement of Material Facts Not In Dispute and Supporting Affidavits and Exhibits**

1.      Lee was employed as a special education teacher with FCPS from 1999 through June 29, 2012, when she entered into the Agreement with the School Board, resolving the parties' "disputes" regarding her performance as a teacher and "all other matters relating to her employment."  Compl., ¶¶ 1, 16, 181-185; SJ Exh. 1 – 2012 Settlement Agreement (Lee Exh. RR).

2.      During the 2010-11 and 2011-12 school years, Lee taught at Halley Elementary School, where she was observed and evaluated by Halley's principal, Jamey Chianetta, and assistant principals, Karen Tuttle and Matthew Salerno.  Compl., seriatim.  During that period of time, Chianetta, Tuttle and Salerno conducted multiple classroom observations and concluded that Lee was having difficulty meeting the performance standards for teachers in four of the five "domains" or standards under which Virginia's teachers were then evaluated, *i.e.*, Planning and Assessment, Instruction, Learning Environment, and Professionalism.  SJ Exh. 2 – Chianetta Aff.; SJ Exh. 3 – Lee observation memos and evaluations, 2008-12; SJ Exh. 4 (Lee Exh. B) – *FCPS Performance Assessment and Evaluation Handbook*, pp. 7-8.

3.      Prior to the 2010-11 school year, Chianetta, and Halley's prior principal, Janet Funk, had noted similar concerns.  SJ Exh. 2; SJ Exh. 3.

4.      Lee received "Does Not Meet" ratings in four domains in her summative (end-of-year) 2010-11 evaluation, and was given a conditional reappointment for the 2011-12 school year.  *Id*.  FCPS teachers whose performance does not meet expectations and consequently receive a conditional reappointment, receive planned and sustained assistance and are asked to participate in an intervention program whereby an intervention team (the teacher, the team administrator, a curriculum designee, and a performance assessment specialist), develop an intervention work plan with the teacher and assist the teacher in implementing the plan.  SJ Exh. 4; SJ Exh. 5 – FCPS Regulation 4440.12, *Performance Assessments and Evaluations*, pp. 6-11.

5.      Lee was placed on such an intervention work plan, which included opportunities for collaboration with staff members regarding the development of student IEPs, use of a model for the development of lesson plans, assignment of a case load of students on only one grade level, and other specific strategies to improve the quality of her instruction.  SJ Exh. 2; SJ Exh. 3.

6.      Despite those efforts, Lee received Does Not Meet ratings on her 2011-12 Mid-Year Evaluation and was advised that unless she improved her performance, Chianetta would not be recommending that Lee be reappointed as a teacher at the end of the 2011-12 contract year (June 30, 2012).  SJ Exh. 2, SJ Exh. 3.

7.      Lee filed a grievance with FCPS on February 10, 2012, pursuant to FCPS Regulation 4461.1, *Procedure for Adjusting Grievances–Contracted/Licensed Personnel*, alleging that her mid-year evaluation was discriminatory and based on her race.  SJ Exh. 6 – Callahan Aff.; SJ Exh. 7 – 02/10/2012 Grievance.  In an attachment to her grievance, Lee also alleged a hostile work environment at Halley and requested an immediate transfer or "an unbiased entity to investigate my concerns."  *Id.*

8.      FCPS Regulation 4461.1 sets forth Part II of the statutory grievance procedure for public school teachers, which is mandated by Va. Code § 22.1-253.13:7(C)(8) and implemented by the Virginia Department of Education ("VDOE") in administrative regulations.  SJ Exh. 8 – 8 VAC 20-90-10, *et seq.* ("the State Grievance Procedure"); SJ Exh. 9 – FCPS Regulation 4461.1.

9.      Part II of the State Grievance Procedure applies to all teacher grievances, **other than the dismissal** or placement on probation of teachers.  SJ Exh. 8 – 8 VAC 20-90-10 (Definition of Grievance); SJ Exh. 9 – § (iv)(D) (emphasis added).

10.      FCPS Regulation 4461.1 provides, at § V(B)(2), that grievances containing complaints of discrimination are referred to the FCPS Office of Equity and Compliance ("OEC") for investigation and determination.  SJ Exh. 9.  On February 14, 2012, Robert Callahan, FCPS Employee Relations Administrator, informed Lee that her complaint was being referred to OEC.  SJ Exh. 6; SJ Exh. 10 – Callahan/Lee Email of 02/14/2012.

11.     On May 14, 2012, Lee received her final ("summative") evaluation for the 2011-12 school year, in which she received Does Not Meet ratings in multiple domains and Chianetta recommended that Lee not be reappointed as a teacher.  SJ Exh. 3 (Lee Exh. JJ).  On the same date, Chianetta provided Lee with written notice that she was recommending that Lee be dismissed from her employment for reasons of incompetence.  Compl. ¶ 160; SJ Exh. 11 – Chianetta Recommendation for Dismissal (Lee Exh. KK).

12.     Under FCPS Regulation 4293.6, just cause for the dismissal of teachers includes "incompetency," which is defined, *inter alia*, as "failure of a classroom teacher to create a classroom environment conducive to effective instruction or present information in a satisfactory manner," . . . "failure to work well with other people and be a constructive team member," . . . "failure to plan or organize effectively," and "failure to receive a satisfactory evaluation rating." SJ Exh. 13 – FCPS Regulation 4293.6, *Employment Actions and/or Records, Dismissal-Definition of Just Cause*.

13.     Thereafter, Lee asked OEC to incorporate the dismissal recommendation into her pending Part II grievance.  Compl. ¶ 167; SJ Exh. 12 (Lee Exh. OO).

14.     The dismissal of teachers is governed by Part III of the State Grievance Procedure, which is incorporated into FCPS Regulation 4294.4, *Procedures for Non-Renewal and Dismissal–Educational Personnel*.  SJ Exh. 6; SJ Exh. 13 – FCPS Regulation 4294.4.

15.     On May 17, 2012, Lee contacted Callahan regarding Chianetta's dismissal recommendation and the appropriate grievance process.  Callahan clarified that the Part II procedures set forth in Regulation 4461.1 did not apply to Part III teacher dismissals, and that under Part III of the State Grievance Procedure (FCPS Regulation 4294.4), Chianetta's recommendation would be forwarded to Dr. Pajardo, Assistant Superintendent for Human

Resources, and then to the Division Superintendent, who would make any final recommendation to the School Board.  SJ Exh. 6; SJ Exh. 14 – Lee/Callahan email thread of 05/17 and 05/18/2012.  Callahan provided Lee with a copy of Regulation 4294.4, and advised her that she needed to wait until she was notified by the Division Superintendent that he intended to recommend her dismissal in order to grieve that recommendation.  *Id.*

16.     On May 23, 2012, Lee was advised in writing that Dr. Pajardo was recommending to Dr. Dale that Lee be dismissed for performance reasons.  Compl., ¶ 162; SJ Exh. 15 – Pajardo Letter (Lee Exh. LL).

17.     On May 30, 2012, the Division Superintendent sent Lee written notice of his recommendation for dismissal.  Compl. ¶¶ 163-164; SJ Exh. 16 – Dale Notice of Proposed Dismissal (Lee Exh. MM).

18.     Dr. Dale's letter informed Lee of her right to challenge his recommendation through the State Grievance Procedure by requesting a hearing before a fact-finding panel within 15 days of receipt of his letter.[1]  *Id.  See also*, SJ Exhs. 8 and 13.

19.     On June 3, 2012, Lee sought further guidance from Callahan regarding the grievance process applicable to her proposed dismissal.  SJ Exh. 6; SJ Exh. 17 – Lee/Callahan email thread of 06/03/2012.

20.     On June 8, 2012, Lee requested a fact-finding panel, using the form attached to FCPS Regulation 4294.4.  SJ Exh. 6; SJ Exh. 18 – Lee Request for Fact-Finding Panel and related Lee/Callahan email thread.  On that form, Lee stated, "I am in the process of seeking

---

[1] Effective July 1, 2013, the Virginia legislature amended the statutory scheme for the dismissal of teachers to, *inter alia*, eliminate fact-finding panels in favor of hearing officers.  References herein to the Virginia Code are to those provisions in effect in 2012.  FCPS has subsequently amended Regulation 4294.4 to follow those statutory changes, while awaiting VDOE's issuance of new regulations updating the State Grievance Procedure.  SJ Exh. 13 is the FCPS regulation in effect prior to the 2013 amendments.

representation." On June 9, 2012, Lee advised Callahan that she hoped to have legal representation by the end of the week. *Id.*

21.     In 2012, under Part III of the State Grievance Procedure and Va. Code §§ 22.1-306-312, a teacher (and/or her representative) grieving a dismissal recommendation was entitled to the reasons for the recommendation for dismissal, access to the employee's personnel file, and copies of all documents relied on by the Superintendent in reaching the recommendation. In the event the employee or school board requested a hearing before a fact-finding panel prior to the school board's action on the recommendation, each party selected another FCPS employee as a representative to the panel (who remained on salary). The procedure contained a mechanism by which the parties then selected a neutral party to chair the three-member fact-finding panel. If the parties could not agree on the third party chair, either party could ask the Chief Judge of the Circuit Court to name a chair. Va. Code § 22.1-312; SJ Exh. 8 (8 VAC 20-90-70) and SJ Exh. 13, §§ D (providing that where the School Board or employee elects to have a fact-finding hearing in lieu of an initial school board hearing, such hearing "shall be conducted in accordance with applicable provisions of the Code of Virginia and Virginia Board of Education regulations.")

22.     The State Grievance Procedure included the following provisions relative to the fact-finding panel:

> J.     The teacher shall bear his or her own expenses. The School Board shall bear the expenses of the division superintendent. The expenses of the panel shall be borne one-half by the school board and one-half by the teacher.

> K.     The parties shall set the per diem rate of the panel. If the parties are unable to agree on the per diem, it shall be fixed by the judge of the circuit court. No employee of the school division shall receive such per diem for service on a panel during his normal work hours if he receives his normal salary for the period of such service.

SJ Exh. 8 – 8 VAC 20-90-30(4)(e)(1-2); *see also* Va. Code §§ 22.1-312(J)(K).

23.     On June 18, 2012, Thomas O'Connell, an attorney with the law firm of Faughnan Mendicino, which firm regularly represented FCPS employees through the Virginia Education Association, wrote to Dr. Dale and FCPS Division Counsel to advise of his firm's representation of Lee.  O'Connell also requested the reasons underlying the dismissal recommendation, all documents relating to the recommendation, and the identity of all witnesses who would testify at the fact-finding hearing.  SJ Exh. 19 – Marchant Aff.; SJ Exh. 20 – Faughnan Mendicino Letter of 06/18/2012.  Lee was copied on O'Connell's letter.  *Id.*

24.     Anne Murphy, then Division Counsel for FCPS, responded to O'Connell's letter and spoke with O'Connell's partner, James Faughnan, on June 19, 2012 to discuss the selection of fact-finding chairs for Lee and two other FCPS employees represented by Faughnan Mendicino.  SJ Exh. 19; SJ Exh. 21 – Murphy/Faughnan/O'Connell Letter of 06/25/2012.

25.     In a subsequent exchange of emails and letters, Murphy and Faughnan discussed and agreed upon the selection of retired Judge Paul F. Sheridan of the McCammon Group to chair Lee's fact-finding panel and exchanged documents in preparation for the fact-finding hearing.  SJ Exh. 22 – Faughnan/Murphy email threads of 06/22/2012 – 07/30/2012; FCPS Letters of 06/27/2012 and 06/29/2012.  During that process O'Connell and Faughnan made no objection to the cost of the panel chair.  SJ Exhs. 19, 20, 21, 22.

26.     On June 21, 2012, OEC advised Lee that based upon its investigation and findings, her discrimination complaint did not support a violation of FCPS policies and regulations prohibiting discrimination.  OEC concluded that there was no evidence indicating that Chianetta's observations and evaluations were based on race, rather than legitimate

nondiscriminatory performance concerns.  Compl., ¶ 168; SJ Exh. 23 – OEC Letter of

06/21/2012 (Lee Exh. PP).

27.     In mid-August, O'Connell conducted settlement discussions on behalf of Lee with

Carol Marchant, Assistant Division Counsel for FCPS, which included an exchange of emails

reflecting the proposed terms of any settlement agreement.  SJ Exh. 19; SJ Exh. 24 –

O'Connell/Marchant settlement email threads, August 15-27, 2012.  Those discussions centered

around O'Connell's request that FCPS withdraw the pending recommendation for dismissal,

remove from Lee's personnel file all documents relating to her poor performance, provide a

neutral employment reference and allow Lee to resign for employment outside FCPS with only

five days notice, in exchange for Lee's acceptance of a voluntary demotion to an IA position and

agreement not to seek further reemployment with FCPS as a teacher.  *Id.*  Marchant noted that,

"Of course, the agreement would include the usual waivers and conditions."  *Id.*

28.     On August 28, 2012, Marchant sent O'Connell a proposed settlement agreement.

SJ Exh. 25 – 08/28/2012, Marchant/O'Connell email thread exchanging settlement agreement.

O'Connell responded the same day, stating that, "The Agreement looks great.  I had two small

changes."  The changes O'Connell proposed were highlighted in his email, and included

additional language be added to paragraph 5, "Waiver of Claims," pertaining to the release of

claims under the ADEA.  *Id.*

29.     FCPS accepted those changes and on August 29, 2012, O'Connell sent Marchant

the final settlement agreement which had been signed by Lee.  SJ Exh. 19; SJ Exh. 26 –

Marchant/ O'Connell email exchange of 08/29/2014 and attached agreement executed by Lee.

30.     Under paragraph 5 of the Agreement, Lee agreed to waive all claims against the

School Board:

**5.**   *Waiver of Claims*.  *Employee waives all claims of any kind she may have against the School Board and its officers, agents, and employees under federal, state, and local laws and regulations, arising from her employment including, but not limited to, claims based on age (including specifically, claims under the Age Discrimination in Employment Act), race, sex, disability, religion, national origin, genetic information (Genetic Information Discrimination Act) or any other employment discrimination; all claims relating to payment of salary or wages (including specifically claims under the Lily Ledbetter Fair Pay Act); and all claims of any kind based on contract, tort, or any claim whatsoever including, but not limited to, defamation, breach of contract, compensation, and infliction of emotional distress. Employee agrees to refrain from filing and hereby withdraws with prejudice her request for a fact-finding hearing, and any and all claims or grievances pertaining to her employment that she may have filed in any forum.  Nothing in this paragraph shall bar Employee from taking action to enforce this Agreement. . . .*

At paragraph 17 of the Settlement Agreement, the parties agreed as follows:

**17.**   *Acknowledgement and Authority*.   *Each party acknowledges that it has been represented by legal counsel in the negotiation and execution of this Agreement and that the terms and conditions of this Agreement have been completely read and understood.  Each party further agrees that it enters into this Agreement voluntarily and that it is the respective party's intention to be legally bound hereby.*

Paragraph 2 provided as follows:

**2.**   *Voluntary Demotion and Reassignment of Employee*.  *Employee hereby tenders her request for a voluntary demotion to the position of Instructional Assistant.  On behalf of the School Board, the Superintendent hereby approves the request for voluntary demotion and withdraws his dismissal recommendation; such dismissal recommendation being null and void. . . .*

*Id.*

31.     The Agreement was signed and accepted by Dr. Pajardo, on behalf of the School Board, on September 10, 2012.  SJ Exh. 1 (Lee Exh. RR).

32.     At no time during the settlement negotiations between the attorneys, or Callahan's interactions with Lee regarding the grievance process, did Lee or her attorney object to the costs of the fact-finding panel.  SJ Exh. 6; SJ Exh. 19.

33.     Pursuant to the Agreement, Dr. Dale withdrew the pending dismissal recommendation and the request to the McCammon Group for a fact-finding chair was cancelled. Lee's personnel file was purged of all documents relating to her negative performance during the 2011-12 school year (observation memos, evaluations and dismissal recommendations) and the Agreement placed in a separate sealed file.  SJ Exh. 6; SJ Exh. 19.

34.     Working through O'Connell, FCPS then provided Lee with a position as an IA for the 2012-13 school year at Garfield Elementary School, which she accepted without objection. SJ Exh. 6; SJ Exh. 27 – Callahan/O'Connell email threads of September and October, 2012.

35.     The Agreement provided that all reference requests were to be directed only to the HR Department and only a neutral reference provided to any of Lee's prospective employers, *i.e.*, dates of employment, position held, salary and, if asked, only that Lee's change in position was "due to a voluntary demotion."  SJ Exh. 1, ¶ 7.

36.     However, in October of 2012, in an email to O'Connell and Callahan, Lee begged FCPS to ask Chianetta to provide a favorable reference to the principal of an elementary school in Prince William County where Lee had interviewed for a teaching position.  SJ Exh. 27.  In a letter to O'Connell, which she attached to her email and shared with FCPS, Lee stated that, "I settled my case in order to start over with a clean slate" and told the Prince William principal that she voluntarily took the IA position in order to care for her ailing father.  Lee asked that Chianetta speak with Prince William, and "speak only of my good characteristics, confirming that I voluntarily stepped down due to personal issues."  *Id.*

37.     Pursuant to the Agreement, the HR Department provided only the neutral reference required under paragraph seven.  SJ Exh. 6.

38.     Lee continued to work as an IA at Garfield Elementary School until March of 2014, when she resigned.  Attached to her notice of resignation was a lengthy attachment in which Lee stated she was resigning due to the racism and discrimination she underwent at Halley.  OEC responded to that notice on April 2, 2012, advising Lee that her allegations of discrimination had been previously investigated and found to be unsubstantiated, and were further resolved by the Agreement of August 29, 2012.  Per the confidentiality provisions of the Agreement, Lee's attachment to her notice of resignation was placed in the sealed file.  SJ Exh. 28 – Lee Notice of Resignation (Lee Exh. SS) and OEC response.

39.     Several months before her resignation, Lee sent a ten-page document to "Defendants" (the Chairman of the School Board, Dr. Dale, Dr. Pajardo and Chianetta), advising them that "it is my intent to file a 16 count, million dollar claim against them" and demanding that the 2012 Agreement be nullified based upon various legal arguments Lee had researched over the past months.  SJ Exh. 29 – 01/14/2014 Lee "Request for Settlement."  In that document, Lee acknowledged that she had been represented by counsel in the settlement negotiations and admitted that "it seemed as though this 'Settlement Agreement' would sustain a summary judgment for dismissal of any claim that I file because I signed and then ratified the 'Settlement Agreement' by continuing in employment with Fairfax County Public Schools as an instructional assistant."  *Id.* p. 2.

40.     In her 2014 Request for Settlement, Lee stated that she had researched "economic duress" and asserted that she was deterred from grieving her dismissal in 2012 by the costs of a fact-finding hearing, citing a *Washington Post* article relating to the recommendation for

dismissal of another FCPS teacher, which reported that "Fairfax spent more than $78,000 on outside lawyers, plus additional expenses for internal staff time, the fact-finding panel and [the teacher's] salary . . ." *Id.* p. 9.

41.     In fact, the actual panel expense for that teacher's fact-finding hearing was $16,506.25, of which one-half, or $8,253.13, was to be paid by the teacher under Va. Code § 22.1-312 and the State Grievance Procedure.  SJ Exh. 19; SJ Exh. 30 – McCammon Invoice.

42.     Neither Callahan nor Marchant advised Lee or her attorneys that the cost to Lee of a fact-finding panel would exceed or approximate $70,000.  SJ Exh. 6, 19.

43.     Lee has a Bachelor of Science degree in Social Psychology and a Masters in Education, SJ Exh. 29 – p. 7, and is no stranger to litigation.  *See Cynthia Lee and Shaunte Lee v. Prince William County School Board, et al.*, Civil Action No. 1:05-cv-00100 (E.D. Va. 2005), appeal denied, Case No. 05-1639 (4th Cir. 2007); *Cynthia Lee v. Children's Services of Virginia, et al.*, Civil Action No. 1:05-cv-1906 (E.D. Va. 2005), appeal denied, Case No. 051640 (4th Cir. 2007); *Lee v. Virginia Children's Services, Inc., et alia*, Civil Action No. 1:05-cv-00153 (E.D. Va. 2005); *Shaunte D. Lee, by her mother, Cynthia Lee v. Prince William County School Board*, Civil Action No. 02-01216-A (E.D. Va. 2002).

## ARGUMENT

**I.     Summary Judgment Should Be Granted As To Counts I and II.**

### A. Count I – Economic Duress.

At Count I, Lee alleges that she entered into the Agreement under economic duress after the Defendants informed her that the Superintendent intended to proceed with a recommendation that she be terminated based on incompetency, unless she grieved that recommendation.  Compl., ¶¶ 189-192.  Lee further states that she was told by Defendants that she needed to pay half the

costs of a fact-finding panel.  *Id.* ¶ 192.  In parentheticals, Lee then states that the cost of such proceeding was "approximately $70,000."  *Id.*  Lee further alleges that she could not afford to pay $70,000 and therefore entered into the Agreement and accepted a demotion to an IA, "which would allow her to maintain some form of income" because it was her "only hope to economically keep her head above water."  *Id.* ¶¶ 193-195.

Virginia law governs the validity of the release and the defense of economic duress, since the Agreement stipulates that "it shall be governed by the laws of the Commonwealth of Virginia."  SJ Exh. 1, ¶ 18; *Friedlander, Inc. v. NCNB*, 706 F. Supp. 1211, 1988, U.S. Dist. LEXIS 16327 *1 (E.D. Va. 1988).  In order to show the validity of a release, the Defendants must only show "that there was some dispute between the parties, that the release was signed and executed settling the dispute, and that consideration was given in return for the release."  *Friedlander*, 1998 U.S. Dist LEXIS **14.  As argued below at Section III of this Memorandum, and supported by the School Board's Statement of Facts and related affidavits and exhibits, Defendants have established the validity of the release.  It is Lee's burden to establish economic duress sufficient to overcome the validity of the release.

"Under Virginia law, '[d]uress is not readily accepted as an excuse' and must be proven by clear and convincing evidence."  *Smith v. Purnell*, Case No. 1:11-cv-922, 2011 U.S. Dist. LEXIS 141738, *18 (E.D. Va. December 9, 2011), citing to *Pelfrey v. Pelfrey*, 25 Va. App. 239, 245, 487 S.E.2d 281 (Va. Ct. App. 1997) (quoting *Norfolk Div. of Soc. Servs. v. Unknown Father*, 2 Va. App. 420, 435, 345 S.E.2d 533 (Va. Ct. App. 1986)).  "The burden of proof is upon the plaintiff to demonstrate by clear, cogent and convincing evidence that the release is invalid under a theory of duress.  *Friedlander*, 1988 U.S. Dist. LEXIS **14, citing to *Nationwide*

*Mutual Ins. v. Muncy*, 217 Va. 916, 234 S.E.2d 70, 72 (1977); *Cary v. Harris*, 120 Va. 252, 255, 91 S.E. 166 (1917).

As this Court observed in *Smith v. Purnell*, "duress exists when a defendant commits a **wrongful act** sufficient to prevent a plaintiff from exercising his free will, thereby coercing the plaintiff's consent," and is a defense that has been extremely limited by the Virginia courts. 2011 U.S. Dist LEXIS, \*18, citing to *Goode v. Burke Town Plaza, Inc.*, 246 Va. 407, 411, 436 S.E.2d 450, 452 (1993) (emphasis added). "Virginia defines duress as the overbearing of a person's free will by an unlawful or wrongful act or by threat such that the party's consent to a contractual agreement is involuntary." *Friedlander v. NCNB*, 1990 U.S. App. LEXIS 26917 \*2 (4th Cir. 1990), citing *Bond v. Crawford*, 193 Va. 437, 69 S.E.2d 470 (1952); *Cary*, *supra*, and *Norfolk Div. Soc. Serv.*, *supra*. In addition, a plaintiff who seeks to invalidate a settlement agreement under a theory of duress must also prove that she proceeded promptly upon removal of the duress to repudiate the contract. *Tyger Constr. Co. v. Beer Precast Concrete Inc, Ltd.*, 1990 U.S. App. LEXIS 27336 at \*8 (4th Cir. 1990).

**1.) <u>Plaintiff Cannot Establish An Unlawful Or Wrongful Act By The Defendants</u>.**

Under Virginia's statutory scheme for the evaluation and dismissal of teachers as adopted by the School Board, the Defendants had a legal right, if not duty, to recommend Lee's dismissal if, in their judgment, Lee failed to meet performance standards. Under Va. Code § 22.1-309 and the State Grievance Procedure, the Superintendent was required by law to inform Lee in writing of that recommendation, that she had a right to a hearing before a fact-finding panel, and that if she chose not to request a hearing, that his recommendation would be forwarded to the School Board for action. The exercise of those duties can hardly be characterized as a wrongful act or "threat" sufficient to keep Lee from exercising her free will. In *In re Blanton*, 105 B.R. 321,

342, 1989 Bankr. LEXIS 1421 *69 (E.D. Va. 1989), the Court observed that, "[c]ourts often cite the general rule that, absent bad faith, it is not duress to threaten what one has a right to do; this has been held to include both threats of litigation and the termination of employment." *Id.* citing to 25 Am. Jur. 2d, Duress and Undue Influence, § 18, at 375-77 (1966), Restatement (2nd) of Contracts, § 176 (1981); *Bond v. Crawford*, 193 Va. App. 437, 69 S.E.2d 470 (1952).

Nor can Lee rely upon her conclusory allegations that the Defendants recommended her dismissal based upon her race, as evidence of a wrongful act. *See*, Section B(2) of this Memorandum.

## 2.) <u>Financial Pressure Does Not Constitute Duress</u>.

"Mere financial hardship cannot constitute duress. If it did, almost all settlements and releases would be called into question." *See Smith v. Purnell*, 2012 U.S. App. LEXIS, *19; *Eddie v. Auto Truck Transp. Co*., Case No. 7:06CV00750, 2007 U.S. Dist. LEXIS 46603, *12 (W.D. Va. June 27, 2007) (rejecting economic duress challenges to releases contained in settlement agreements, and citing to *Seward v. American Hardware Co.*, 161 Va. 610, 639, 171 S.E. 650, 662 (1933) and *Cary v. Harris*, *supra*, for the proposition that," [a] contract reluctantly entered into by one badly in need of money without force or intimidation and with full knowledge of the facts is not a contract executed under duress"). *See also Goode v. Burke Town Plaza*, 1993 Va. LEXIS 45, **67 (1993) holding that "because the application of economic pressure by threatening to enforce a legal right is not a wrongful act, it cannot constitute duress."

Moreover, had Lee proceeded with the panel, she could only have been held responsible for one-half the costs of the neutral chair who she had a right to agree upon, and not the School Board's costs of defense. Therefore, Lee's reliance on the reported overall costs <u>to FCPS</u> of defending another teacher's grievance is entirely misplaced. Regardless, the statutory

requirement that the teacher pay one-half of the cost of a fact-finding panel was a routine litigation cost outside the control of the Defendants.  Parties who enter into settlement agreements typically factor litigation costs into the pros and cons of resolving a dispute.

### 3.) Lee Negotiated Favorable Terms And Accepted The Benefits Of The Agreement.

Not only was Lee an educated woman who was familiar with the legal system and represented by knowledgeable counsel during the negotiation of the Agreement, but her attorney negotiated several terms more favorable to Lee than were proposed by counsel for the School Board.  This included language declaring the Superintendent's dismissal recommendation "null and void," adding revocation language under the ADEA to the waiver provision, and allowing Lee to resign from FCPS with only five business days notice if she found other employment.  SJ Exh. 19; SJ Exh. 25.  *See Poindexter v. Poindexter*, Record No. 2286-11-2, 2012 Va. App. LEXIS 140, *7 (Ct. App. Va. May 1, 2012), rejecting duress challenge to property settlement agreement where, *inter alia*, husband negotiated terms favorable to him before signing the agreement; *Ahmed v. Ahmed*, Record No. 0256-04-3, 0269-04-3, 2004 Va. App. LEXIS 486, *6 (Ct. App. Va. Oct. 12, 2004), rejecting unconscionability challenge to property settlement agreement which was negotiated between the parties while both were represented by counsel, husband understood the terms of the agreement and voluntarily executed the same.

Lee also readily accepted the benefits of the Agreement, asking in October of 2012 for a favorable reference devoid of any suggestion of her prior performance issues, telling at least one prospective employer that she had "voluntarily" accepted a demotion in order to care for her ailing father, and then accepting the salary and benefits of continued employment for nearly two years before voluntarily resigning under circumstances that still allow her to seek employment as a teacher elsewhere "with a clean slate."

### 4.) <u>Lee Did Not Promptly Repudiate The Agreement.</u>

Lee waited two years to "repudiate" the Agreement as procured under duress, despite her acknowledgements that she had voluntarily entered into the Agreement with benefit of counsel (SJ Exh. 1, ¶ 2; SJ Exh. 27; SJ Exh. 29).

A party to a settlement agreement cannot negotiate a favorable resolution to a dispute, accept the benefits of that resolution and then belatedly attempt to set aside the agreement simply because she later regrets her earlier decision.  *See Tyger Constr. Co. v. Beer Precast Concrete, Ltd.*, 1990 U.S. App. LEXIS 27336, *8, holding that a party seeking to invalidate a contract based upon economic duress must show that such party "proceeded promptly upon the removal of the duress . . . to repudiate the contract," quoting *Gloth v. Gloth,* 154 Va. 511, 552, 153 S.E. 879, 892 (1930).

### B.  <u>Count II – Unconscionability.</u>

Count II of the Complaint is based upon a series of conclusory allegations in which Lee contends that "due to her race she was forced to accept the terms of the Settlement Agreement," that "the terms of the Settlement Agreement are oppressive" and "intrinsically unfair," that the Agreement "forced upon" her a "demotion, pay cut, agreement that she can never be employed in Fairfax County again as a teacher, and relinquishment of any cause of action to rectify the discrimination she endured," and, lastly, that "no one would enter into such an agreement unless forced explicitly or implicitly."  Compl., ¶¶ 200-204.

A plaintiff relying on unconscionability to set aside a contract must prove the same by clear and convincing evidence.  *March v. Tysinger Motor Co.*, Case No. 3:07-cv-508, 2007 U.S. Dist. LEXIS 91202, *11 (E.D. Va. Dec. 12, 2007) citing to *Pelfrey v. Pelfrey*, 25 Va. App. 239, 487 S.E.2d 281,284 (Va. Ct. App. 1997).  "Virginia law defines an unconscionable contract as

'one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other.  The inequality must be so gross as to shock the conscience.'"  *Mobil Oil Corp. v. Earhart Petroleum*, 2000 U.S. App. LEXIS 8674, *13, 42 U.C.C. Rep. Serv. 2d (Callaghan) 732 (4th Cir. 2000), quoting *Management Enterprises, Inc. v. Thorncroft Co.*, 243 Va. 469, 416 S.E.2d 229, 231 (Va. 1992); *Smyth Bros. v. Beresford*, 128 Va. 137, 104 S.E. 371 (1920).  "Unconscionability deals primarily with a grossly unequal bargaining power at the time a contract is formed."  *Envirotech Corp. v. Halco Engineering, Inc.*, 234 Va. 583, 364 S.E.2d 215, 220 (1988).  The Court of Appeals of Virginia has further explained that the doctrine of unconscionability is "concerned with the intrinsic fairness of the terms of the agreement in relation to circumstances, including the relationship and duties between the parties."  *Derby v. Derby*, 8 Va. App. 19, 28, 378 S.E.2d 74, (Ct. App. Va. 1989).

## 1.) <u>The Agreement Did Not Create An Inequality "So Gross As To Shock the Conscience."</u>

In exchange for Lee's agreement to resolve all disputes arising out of her employment, waive all claims against the School Board and its employees and request a voluntary demotion from a teaching position to that of an instructional assistant, the School Board agreed to withdraw and declare "null and void" the pending recommendation for dismissal, which, as Lee has alleged, would have otherwise resulted in her termination from teaching on incompetency grounds, "leaving her without a job, but also without the means of obtaining a new job." Compl., ¶¶ 181, 191, 195.

Rather than dismiss Lee altogether, the School Board agreed to continue to employ Lee as an IA, taking into account her preferences regarding placement, and allowing her to apply for and be considered for other nonteaching positions with FCPS.  In the event Lee located alternative employment outside FCPS, the School Board agreed to accept her resignation with

only five business days notice, leaving FCPS with only a brief time to find a replacement.  The School Board also agreed to give prospective employers a "neutral reference," indicating only that Lee's change in status was due to a voluntary demotion and providing no further information regarding her performance history, negative evaluations or the fact she had been recommended for dismissal.  The School Board further agreed to a confidentiality provision under which the Agreement, and all 2011-12 observation memos, evaluations, and notices of proposed dismissal were removed from Lee's personnel files, and the Agreement itself placed in a separate sealed file to be accessed only by the Assistant Superintendent for Human Resources for purposes of administering the Agreement.

Thus, in exchange for her waiver of claims, withdrawal of her grievance and request for a voluntary demotion and associated reduction in salary of $25,000, Lee eradicated all traces of her 2011-12 performance deficiencies and insulated herself from the stigma of an involuntary dismissal for incompetence, preserving her ability to seek employment as a teacher outside FCPS while continuing to remain employed by FCPS in any other capacity indefinitely.  Lee also avoided the uncertainty, stress and costs associated with an evidentiary hearing before a fact-finding panel and subsequent School Board hearing or decision, as well as the possibility that the panel and/or School Board would uphold the Superintendent's recommendation and generate additional negative written findings of fact and decisions to be included in her personnel file. Such an agreement hardly "shocks the conscience."

### 2.) Lee Cannot Establish Racial Discrimination.

While Lee decries the waiver of claims provision of the Agreement as unconscionable for depriving her of the right to sue for racial discrimination (and is likely to rely on the same argument to establish a wrongful act demonstrating economic duress), her Complaint fails to

state a claim for such discrimination.  *See*, Defendants' Motion to Dismiss Under Rule 12(b)(6).

Nowhere in her Complaint does Lee identify any specific acts or statements by any Defendant

from which it could be inferred that she received negative performance evaluations or was

recommended for dismissal based on her race.  The Complaint contains only Lee's subjective

beliefs and conclusory allegations of disparate treatment in the employee evaluation process and

the provision of remedial resources.  Compl., ¶ 72 ("other teachers" not required to use LEARN

lesson plan model); ¶ 120 (during mid-year evaluation conference, Lee "felt the negative

treatment was racially motivated . . . as if they were requiring that she meet a higher standard

than her Caucasian co-workers . . . and had been reprimanded for minor actions in which others

. . . had not").

     Nor can Lee provide any evidence that her treatment at Halley, evaluations and

Defendants dismissal recommendations were based on her race as opposed to her performance as

a teacher.  In Lee's own exhibits, and other documents in which Lee repeatedly alleged racial

discrimination and a hostile work environment during and after her employment, she never

articulated a single fact indicative of the same, but relied solely upon her own conclusions, her

subjective "belief" that Caucasian teachers did not receive negative observations or evaluations,

and her "opinion" that her dismissal recommendation "was due to race."  *See* SJ Exh. 7 –

02/10/2012 Grievance ("I feel as though I must meet a higher level of standard than my fellow

Caucasian co-workers . . . I feel I was treated unfairly during my mid-year evaluation and I feel

the negative way I am being treated is racially motivated"); SJ Exh. 12 (Lee Exh. OO) – Lee

05/17/2012 request to OEC ("My discipline and ultimate termination is . . . based on her

[Chianetta's] racial bias . . ."); SJ Exh. 29 – 01/14/2014 Request for Settlement ("I also believe

that Jamey Chianetta was determined to push me out . . . I believe her actions were for racist

reasons"); SJ Exh. 28 – 03/24/2014 Notice of Resignation ("In my opinion, Jamey is racist . . . Former Superintendent Jack Dale appeared to be on his own witch hunt to get rid of African-American teachers").

Mere conclusory allegations and personal beliefs are insufficient to support a nonmoving party's case and avoid summary judgment in an employment discrimination action.  *Howard v. Lakeshore Equip. Co.*, 482 Fed. Appx. 809, 2012 U.S. App. LEXIS 11540, **2 (4th Cir. 2012); *Gardner v. Potter*, Case No. 1:06cv980, 2007 U.S. Dist. LEXIS 25855, *10 (E.D. Va. April 6, 2007); *Long v. First Union Corp.*, 894 F. Supp. 933 1995 U.S. Dist. LEXIS 11409, **17 (E.D. Va. 1995); holding that conclusory allegations of discrimination are insufficient to withstand summary judgment in a Title VII action involving disparate disciplinary practices.  Similarly, "conclusory statements of personal beliefs of discrimination are not accepted as factual allegations."  *Goode v. Central Virginia Legal Aid Society*, Case No. 3:14cv281, 2014 U.S. Dist. LEXIS 111650, *9 (E.D. Va. Aug. 12, 2014), citing to *Ashcroft v. Iqbal E. Shore Mkfs., Inc. v. J.D. Assocs., Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000), 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Therefore, Lee's reliance on the relinquishment of her racial discrimination claims as evidence of unconscionability (or a wrongful act supporting her claim of economic duress) is undercut by the lack of any evidence supporting such a claim.  *See, Long v. Teradata Corp.*, Case No. 1:12cv787, 2012 U.S. Dist. LEXIS 171950, *16 (E.D. Va. 2012) (granting motion to dismiss common law conspiracy claim predicated on underlying wrong of racial discrimination based on plaintiff's failure to present factual allegations (versus conclusory allegations) establishing he was intentionally terminated due to his race.

**III.**    **All Remaining Counts In The Complaint Are Barred By Lee's Waiver Of Claims**.

Lee has referenced and incorporated into her Complaint, the executed 2012 Agreement which is both SJ Exh. 1 and Lee Exh. RR.  The School Board contends that the Agreement is a valid, binding and unambiguous contract which, under paragraph five, "Waiver and Release," estops Lee from asserting the claims set forth in her Complaint.

Settlement agreements are favored under Virginia law, and absent evidence of fraud, duress or unconscionability sufficient to set aside such an agreement, they must be upheld.  *See Cary v. Harris*, 120 Va. 252, 91 S.E. 166, 1917 Va. LEXIS 103, ***9-13 (1917).  In determining the enforceability of a settlement agreement, the Court must look for the essential elements of a valid contract, which must exist to support a binding compromise settlement.  *Montagna v. Holiday Inns*, 221 Va. 336, 269 S.E.2d 838, 1980 Va. LEXIS 252, *21 (1980).  Defendants have shown that (1) there was a dispute between the parties, (2) that the release was signed (here, with benefit of counsel) and (3) consideration given and accepted in exchange for the release.  *See Friedlander*, 1988 U.S. Dist. LEXIS **14.

"It is well established that mutual promises in a contract constitute valuable consideration," and that where "both parties 'promise[d] to forbear the exercise of a legal right,' they have supplied adequate consideration to support a contract."  *Commonwealth of Virginia v. Woelfl*, 57 Va. Cir. 247, 2001 Va. Cir. LEXIS 437, **7 (Cir. Ct. City of Richmond, 2001), citing to *Price v. Taylor*, 251 Va. 82, 85, 466 S.E.2d 87 (1996) and *Alexakis v. Mallios*, 261 Va. 425, 430, 544 S.E.2d 650 (2001).  *See also Hanim v. Scott*, 258 Va. 35, 38, 515 S.E.2d 773, 774 (1999).  Here, *inter alia*, the School Board agreed that the Superintendent would withdraw his dismissal recommendation and Lee agreed to waive all claims arising out of her employment.  Thus, the agreement is a valid enforceable contract.

Where an agreement contains an unambiguous release of claims, the Court may enforce the same. *Virginia Impression Products Co., Inc. v. SCM Corp.*, 448 F.2d 262, 1971 U.S. App. LEXIS **4-9, 8300 (4th Cir. 1971). When interpreting a contract, "the function of the court is to construe the contract made by the parties, not to make a contract for them," and "where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . This is so because the writing is the repository of the final agreement of the parties." *VEPCO v. Dominion Va. Power*, 270 Va. 309 at 316, 618 S.E.2d 323 (2006) (citing *Berry v. Klinger*, 225 Va. 201, 208 (1983)).

Viewing the Agreement as a whole, it is clear that at the time of execution in 2012, it was the intent of the parties that Lee would release the School Board and its employees from "all claims arising out of her employment." At paragraph R2, the parties state that "the School Board and the Employee disagree regarding her performance as a teacher and wish <u>to resolve their dispute and all other matters relating to her employment</u> as of the effective date of this settlement." SJ Exh. 1, ¶ R2 (emphasis added). At paragraph 5, Lee waived "all claims of any kind under federal, state and local laws and regulations . . . arising from her employment," (Counts I-X), "including but not limited to claims based on . . . race . . . or any other employment discrimination (Counts VI-X), "defamation (Count IV), and "all claims of any kind based on contract, tort, or any claim whatsoever" (Counts I-X).

Thus, the release/waiver provision of the Agreement operates to bar all claims asserted in the Complaint. *Virginia Impressions Products Co.*, 1971 U.S. App. LEXIS 8300 at **5. *See also Murayma 1997 Trust v. NISC Holdings, LLC*, 284 Va. 234, 250, 727 S.E.2d 80, 2012 Va. LEXIS 149, ***27 (2012), holding Trust to terms of settlement agreement which expressly released the defendants "from any known or unknown claims based on fraud or any other theory

of recovery 'arising from or in any way whatsoever connected with [its] ownership of a Class A [m]embership [i]nterest in NISC,'" and rejecting fraud in the inducement claim based in part on the fact both parties were represented by counsel during settlement negotiations.

Here, Lee was represented throughout the settlement negotiations and thereafter by competent legal counsel, who specifically reviewed and modified the waiver provision before it was signed by Lee in 2012.  "Once a competent party makes a settlement and acts affirmatively to enter into such settlement, [his] second thoughts at a later time upon the wisdom of the settlement do not constitute good cause for setting it aside." *Alexakis v. Mallios*, 261 Va. 425, 544 S.E.2d 650, 2001 U.S. Dist. LEXIS 54, ***6 (2001), quoting *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 385, 457 S.E.2d 36, 41 (1995).

## Conclusion

WHEREFORE, on the foregoing grounds, Defendants move this Court for summary judgment on all counts asserted in the Complaint.


Dated:  October 6, 2014

Respectfully Submitted,

FAIRFAX COUNTY SCHOOL BOARD,
DR. JACK DALE,
DR. PHYLLIS PAJARDO and
JAMEY CHIANETTA


By: _____/s/_____
    Mary McGowan, Esq., VSB No. 22222
      (mmcgowan@bklawva.com)
    Kristi L. Johnson, Esq., VSB No. 77776
      (kjohnson@bklawva.com)
    BLANKINGSHIP & KEITH, P.C.
    9300 West Courthouse Road, Suite 201
    Manassas, Virginia  20110
    (703) 365-9945 (telephone)
    (703) 365-2203 (facsimile)

    *Counsel for Defendants*

4846-4876-1118, v.  1